**SO ORDERED**

**Date signed May 03, 2004**



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
#### (Greenbelt Division)

| | | |
|---|---|---|
| | * | |
| **In re:** | * | |
| | | |
| **NATIONAL ENERGY & GAS** | * | Case No.: 03-30459 (PM) and 03-30461 (PM) |
| **TRANSMISSION, INC. (f/k/a PG&E** | | through 03-30464 (PM) and 03-30686 (PM) |
| **NATIONAL ENERGY GROUP, INC.),** *et al.* | * | through 03-30687 (PM) |
| | | Chapter 11 |
| **Debtors.** | | (Jointly Administered under |
| | * | Case No.: 03-30459 (PM)) |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### ORDER CONFIRMING THE MODIFIED THIRD AMENDED PLAN OF
### REORGANIZATION FOR NATIONAL ENERGY & GAS TRANSMISSION, INC.
### <u>(CASE NO. 03-30459)</u>

Upon the Third Amended Plan of Reorganization for National Energy & Gas

Transmission, Inc. (Case No. 03-30459), dated February 26, 2004 (the "Plan"), which Plan was

proposed and filed with this Court by National Energy & Gas Transmission, Inc ("NEGT" or the

"Debtor"), one of the above-captioned debtors and debtors in possession (collectively, the

"Debtors"); and upon the Disclosure Statement for the Plan, dated February 26, 2004 (the

"Disclosure Statement"), which Disclosure Statement was proposed and filed with this Court by

the Debtor; and upon (a) the hearing held before this Court on February 26, 2004, to consider

approval of the Disclosure Statement and to establish certain voting procedures concerning

solicitation of votes in connection with the Plan (the "Disclosure Statement Hearing"), and (b)

the order dated March 1, 2004 (i) Approving the Disclosure Statement; (ii) Approving Form and

Manner of Solicitation; (iii) Approving Form of Ballots and Related Notices; (iv) Establishing a

Voting Record Date and Voting Procedures; (v) Establishing the Date and Place for the

Confirmation Hearing and the Procedures and Deadline for Filing Objections to Confirmation;

and (vi) Granting Related Relief (the "Disclosure Statement Order"); and upon the appendices to

the Disclosure Statement filed with the Bankruptcy Court on April 16, 2004, as required by the

Disclosure Statement Order (as the same may be amended, the "Appendices"); and upon the

affidavit of Joseph A. Bondi, Chief Executive Officer and Chief Restructuring Officer of the

Debtor, sworn to on April 23, 2004 and filed with the Bankruptcy Court on April 26, 2004; and

upon the affidavit of Bernard Wolfman, Fessenden Professor of Law at Harvard Law School,

sworn to on April 26, 2004 (the "Wolfman Affidavit") and filed with the Bankruptcy Court on

April 26, 2004; and upon the declaration of Kathy Gerber of Bankruptcy Services, LLC ("BSI"),

the balloting agent retained by the Debtor, sworn to on April 23, 2004, (the "Voting

Declaration") and filed with the Bankruptcy Court on April 26, 2004; and the Disclosure

Statement (with a copy of the Plan attached thereto as Exhibit A), the Disclosure Statement

Order, the Confirmation Hearing Notice (as defined in the Disclosure Statement Order), a ballot

or master ballot and related materials (collectively, the "Solicitation Materials") having been

transmitted to all known holders of claims entitled to vote in accordance with the Disclosure

Statement Order; and the publication notice of the Confirmation Hearing and related objection

deadline having been published on March 18, 2004 in the national editions of The Wall Street

Journal and The Washington Post in accordance with the Disclosure Statement Order; and the

Disclosure Statement Order having fixed April 19, 2004, at 4:00 p.m., prevailing eastern time, as the last day and time for filing of objections to confirmation of the Plan; and upon the affidavits of service filed with respect to the mailing of the Solicitation Materials; and the solicitation of acceptances from holders of claims entitled to vote having been made within the time and in the manner set forth in the Disclosure Statement Order; and upon the Modifications (defined below) to the Plan proposed by the Debtor on April 13, 2004 and April 28, 2004; and upon the Memorandum of Law in Support of Confirmation of Debtor's Third Amended Plan of Reorganization and Response to Objections to Confirmation, filed with this Court on April 26, 2004; and upon the timely filed objections to confirmation of the Plan having been filed by the Entities identified on Exhibit A (the "Objections"); and a hearing to consider confirmation of the Plan having been duly noticed and held before this Court on April 28, 2004 (the "Confirmation Hearing"); and upon the full and complete record of the Confirmation Hearing and all matters and proceedings heretofore part of the record of this chapter 11 case; and after due deliberation and sufficient cause appearing therefor,

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED that:

A.      Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor proposed certain modifications (collectively, the "Modifications") to the Plan (i) by motion dated April 13, 2004 (the "Plan Modification Motion"); and (ii) on the record at the Confirmation Hearing.  Under the circumstances, the form and manner of notice of the Plan Modification Motion and the proposed Modifications are due and adequate, and no other or further notice of the Plan Modification Motion or the proposed Modifications is necessary or required.

B.      In accordance with Bankruptcy Rule 3019, the Modifications do not (i) affect the classification of Claims or Interests or adversely affect the treatment afforded holders of Claims or Interests; (ii) constitute material modifications of the Plan under section 1127 of the Bankruptcy Code; (iii) cause the Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code; (iv) adversely change the treatment of holders of Claims who have accepted the Plan (other than any holders of Claims who have accepted such Modifications in writing or in open court); or (v) require resolicitation of acceptances or rejections from any such holders nor do they require that any holders be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

C.      All references to the Plan contained in this Order shall be to the Plan as modified by the Modifications and such Plan as modified shall constitute the Modified Third Amended Plan of Reorganization for National Energy & Gas Transmission, Inc. (Case No. 03-30459-PM).

D.      All defined terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan.

E.      This Court has jurisdiction over the Debtor's chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2) and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of title 11 of the United States Code (the "Bankruptcy Code") and should be confirmed.

F.      This Court takes judicial notice of the docket of this chapter 11 case maintained by the Clerk of this Court and all pleadings referenced therein, including all

4

documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the pendency of this chapter 11 case, including, without limitation, the Disclosure Statement Hearing and the Confirmation Hearing.

G.    Notice of the Confirmation Hearing, the treatment of Claims and Interests under the Plan, the treatment of unexpired leases and executory contracts under the Plan, and the relevant deadlines for the submission of ballots and objections has been provided in the form, within the time and substantially in accordance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the procedures approved and prescribed by this Court in the Disclosure Statement Order.  Publication notice of the Confirmation Hearing and related objection deadline was published on March 18, 2004 in the national editions of The Wall Street Journal and The Washington Post as specified in the Disclosure Statement Order.  The notice described in this finding G is adequate and sufficient for parties in interest pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002(b) and 3020 and other applicable law.

H.    Ballots were properly transmitted to holders of Claims in Class 3 (General Unsecured Claims), the only Class under the Plan that is treated as impaired within the meaning of section 1124 of the Bankruptcy Code and entitled to vote to accept or reject the Plan in accordance with the Disclosure Statement Order (the "Voting Class").

I.    The Debtor properly solicited votes for the Plan from the Voting Class in good faith and in a manner consistent with the Bankruptcy Code.

J.    The Voting Declaration provided by BSI is consistent with Bankruptcy Rule 3018 and complies with the requirements of Local Bankruptcy Rule 3018-1.

K.    The Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code.

L.      The classification scheme of Claims and Interests under the Plan is reasonable.  In accordance with section 1122 of the Bankruptcy Code, Claims or Interests in each particular Class are substantially similar to other Claims or Interests in such Class.

M.      The Plan designates Classes of Claims and Interests, satisfying the requirements of section 1123(a)(1) of the Bankruptcy Code.  Specifically, the Plan establishes the following Classes of Claims and Interests:  Class 1 (Secured Claims); Class 2 (Priority Claims); Class 3 (General Unsecured Claims); Class 4 (Subordinated Claims); and Class 5 (Interests).

N.      The treatment of each of the Classes of Claims and Interests is specified in section 4 of the Plan and, therefore, satisfies Bankruptcy Code sections 1123(a)(2) and 1123(a)(3).

O.      The Plan provides for the same treatment for each Claim or Interest of a particular Class, satisfying the requirements of section 1123(a)(4) of the Bankruptcy Code.

P.      As evidenced by the Voting Declaration, the Plan has been accepted by Class 3, the Voting Class, in accordance with section 1126 of the Bankruptcy Code and consistent with Bankruptcy Rule 3018 and the Disclosure Statement Order.

Q.      Classes 1 and 2 are unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

R.      Classes 4 and 5 (whose members will receive no distribution) are impaired and deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

S.      The Plan provides for adequate means for its implementation, satisfying the requirements of section 1123(a)(5) of the Bankruptcy Code.

T.       Pursuant to Bankruptcy Code section 1123(a)(5), any action to be taken by the Debtor pursuant to, or consistent with, the terms of the Plan that is deemed by the laws of any state, to involve the "transfer of ownership or control of an entity providing utility related services," or other similarly regulated activities involving utilities or utility related services or assets, is exempt from the requirements of such laws and such laws are preempted by the terms of this Order.

U.       The Plan provides for the inclusion, in the amended and restated certificate of incorporation for the Reorganized Debtor, of a provision prohibiting the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code, and therefore satisfies the requirements of such section.

V.       The Plan contains only provisions that are consistent with the interests of Creditors and Interest holders and with public policy with respect to the manner of selection of officers and directors of the Reorganized Debtor, satisfying the requirements of section 1123(a)(7) of the Bankruptcy Code.

W.       The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

X.       The Plan complies with the applicable provisions of the Bankruptcy Code, satisfying the requirements of Bankruptcy Code section 1129(a)(1).

Y.       The Debtor has complied with the applicable provisions of the Bankruptcy Code, satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code.

Z.       Based upon the testimony adduced and/or proffered at the Confirmation Hearing or submitted by affidavit and Bankruptcy Rule 3020(b)(2), the Plan has been proposed

in good faith and not by any means prohibited by law, satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code.

AA.    The Debtor, the informal group of holders of the Old Senior Notes, the parties set forth on schedule 8.07(a) of the Plan, the Official Committees, Entities serving on either of the Official Committees, and any of their respective officers and directors (who held such positions on or after July 9, 2003), partners, employees, members, agents, advisors, affiliates, underwriters or investment bankers, and any other professional persons employed by any of them (each of the foregoing solely in their capacity as such) have acted in good faith in connection with and relating to the formulation, negotiation, solicitation, implementation, confirmation and consummation of the Plan and the Disclosure Statement, and have acted in compliance with the applicable provisions of the Bankruptcy Code.

BB.    Any payment made or to be made by the Debtor for services or for costs and expenses in, or in connection with its chapter 11 case or in connection with the Plan and incident to its chapter 11 case, has been approved by, or is subject to the approval of, this Court as reasonable, satisfying the requirements of section 1129(a)(4) of the Bankruptcy Code.

CC.    On April 23, 2004, the Debtor disclosed the identity and affiliations of the individuals proposed to serve, after confirmation of the Plan, as directors and officers of the Reorganized Debtor; the appointment to, or continuance in, such offices of such individuals is consistent with public policy and the interests of the Debtor's Creditors and Interest holders; in fact, in accordance with the Plan, the Official Committees chose the majority of individuals to be appointed; and the Debtor has disclosed the identity of any insiders who will be employed or retained by the Reorganized Debtor subsequent to confirmation of the Plan and the nature of any

compensation to be paid to such insiders.  These disclosures satisfy the requirements of section 1129(a)(5) of the Bankruptcy Code.

DD.    As no governmental authority has jurisdiction over the rates of the Debtor and the Plan does not effectuate any such rate change, section 1129(a)(6) of the Bankruptcy Code is not applicable to the Debtor.

EE.    With respect to each impaired class of Claims or Interests, each holder of a Claim or Interest of such Class:  (i) has accepted the Plan, if entitled to vote thereon; or (ii) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code on such date. This treatment satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

FF.    Except to the extent that a holder has agreed or agrees to a different treatment of such Claim, the Plan provides that, with respect to each Allowed Claim of a kind specified in: (i) section 507(a)(1) of the Bankruptcy Code, the holder of such Claim will receive on account of such Claim, on the later of the Effective Date and the first Business Day after the date that is thirty (30) days after such claim becomes allowed, or as soon thereafter as is reasonably practicable, Cash equal to the allowed amount of such Claim; and (ii) section 507(a)(8) of the Bankruptcy Code, the holder of such Claim will receive, on account of such Claim, at the sole option of the Reorganized Debtor, either (1) cash on the later of the Effective Date and the first Business Day after the date that is thirty (30) days after such claim becomes Allowed, or as soon thereafter as is reasonably practicable, equal to the allowed amount of such Claim or (2) deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such Claim, of a value as of the Effective Date equal to the allowed amount of

such Claim.  This treatment satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

GG.    The Plan has been accepted by Class 3, the only Voting Class, which acceptances were determined without including any acceptance of the Plan by any insider holding a Claim in such Class.  As a result, the requirement of section 1129(a)(10) of the Bankruptcy Code is satisfied.

HH.    Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor.  As a result, the requirement of section 1129(a)(11) of the Bankruptcy Code is satisfied.

II.    The fees payable by the Debtor to the United States Trustee or the Clerk of this Court, as provided under 28 U.S.C. § 1930(a)(6), constitute administrative expenses entitled to priority under section 507(a)(1) of the Bankruptcy Code and the treatment of such fees in the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

JJ.    The Debtor does not provide for the payment of any retiree benefits within the meaning of section 1114 of the Bankruptcy Code.

KK.    The requirements of section 1129(b) of the Bankruptcy Code are satisfied as to Classes 4 and 5, the only non-accepting Classes, because (i) no holders of Claims or Interests junior to Classes 4 and 5 will receive or retain any property under the Plan on account of such junior Claims or Interests; and (ii) the Plan is fair and equitable and does not discriminate unfairly with respect to Classes 4 and 5.

LL.    The New Common Stock, the Tranche A Notes, and the Tranche B Notes (collectively, the "Plan Securities") are being issued pursuant to the Plan in exchange for Claims against the Debtor.  Pursuant to section 1145 of the Bankruptcy Code, the offer and sale of the

Plan Securities and transactions in such securities shall be and are exempt from the registration requirements of section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, such securities (collectively, "Federal and State Securities Laws").  Pursuant to section 1145(c) of the Bankruptcy Code, the issuance of Plan Securities under the Plan is a public offering and, therefore, subject to any transfer restrictions set forth in any of the Plan Securities, such Plan Securities may thereafter be resold and traded by any person that is not an underwriter within the meaning of section 1145(b) of the Bankruptcy Code (an "Underwriter") as unrestricted securities.

      MM.    The Litigation Trust Beneficial Interests are also being issued pursuant to the Plan in exchange for Claims against the Debtor.  The Litigation Trust Beneficial Interests may not be transferred or assigned except by operation of law, by will or in accordance with the laws of descent and distribution and to certain affiliates of Litigation Trust Beneficiaries as set forth in the Litigation Trust Agreement.  The Litigation Trust Beneficial Interests may in the future also be transferable to the extent set forth in any "no action" letter or other confirmation received by the Reorganized Debtor or the Litigation Trustee from the Securities and Exchange Commission, or a legal opinion issued to the Litigation Trustee and the Reorganized Debtor, as provided in the Litigation Trust Agreement.

      NN.    Each of the Official Committees is satisfied with the amount and manner of funding of the Litigation Trust.

      OO.    No party in interest that is a governmental unit has requested that this Court not confirm the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and the

principal purpose of the Plan is not such avoidance.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

PP.    All conditions to confirmation of the Plan, pursuant to section 9.01 of the Plan, have been satisfied or waived.

QQ.    Pursuant to section 7.02 of the Plan, the non-debtor parties to the executory contracts and unexpired leases listed in Schedule 7.02 of the Plan, as the same may be amended from time to time by the Debtor prior to the Effective Date, (the "Assumed Contracts"), shall receive notice of the assumption of such contracts and leases and the proposed cure amounts, if any, with respect to such contracts and leases.  To the extent objections relating to cure amounts are resolved, the Reorganized Debtor shall enjoy all of the rights and benefits under each such contract or unexpired lease without the necessity of obtaining any party's written consent to the Reorganized Debtor's assumption or retention of such rights and benefits.

RR.    Pursuant to section 7.01 of the Plan, any and all executory contracts and unexpired leases (the "Rejected Contracts") that: (i) are not the subject of a motion to assume or reject on the Confirmation Date; (ii) are not contained in Schedule 7.02 of the Plan, as the same may be amended from time to time prior to the Effective Date; and (iii) were not assumed or rejected before the Confirmation Date, shall be deemed rejected as of the Effective Date and the non-debtor parties to such contracts and leases shall receive notice of the rejection and the bar date with respect to damage claims, if any, related to such rejection.

SS.    Certain provisions of the Plan including, but not limited to, sections 4.03(b), 4.03(c), 8.01(e), and 8.02, incorporate the compromise and settlement of certain claims and issues, inter alia, by and among the Debtor, holders of the Old Senior Notes and holders of Project Guarantee Claims (collectively, the "Settlements").  The negotiations of such Settlements

were conducted in good faith and at arms' length, and each such Settlement is of benefit to the

Debtor's estate and represents a fair, necessary and reasonable compromise of the Claims held

by the holders thereof.  The terms and conditions of each such compromise and settlement are

therefore an integral part of the Plan.  In this regard, parties voting for and accepting the Plan

have relied upon the terms and conditions of each of the Settlements.

TT.    The Settlements represent a compromise between and among the Debtor

and its creditors of certain claims that were or could have been commenced prior to the date of

entry of this Order.  The Settlements, as reflected in the relative distributions and recoveries of

holders of Claims and Interests under the Plan, are fair and reasonable and are accordingly

approved in all respects pursuant to Bankruptcy Rule 9019(a).  The Settlements also have

facilitated the creation and implementation of the Plan and benefit the Debtor's estate and

Creditors.

UU.    The releases, waivers of claims and related injunctions contained in the

Plan are limited in scope and are necessary to the confirmation of the Plan and Class 3, the only

Voting Class, has voted overwhelmingly to accept its proposed treatment under the Plan.

Without such releases, the directors and officers of the Debtor serving after the Petition Date

would not have continued to work for the Debtor and, without such parties, the Debtor would

have lacked, among other things, the necessary institutional knowledge to operate its business

resulting in substantial delays in the negotiation and confirmation of a plan and, therefore, delays

in distributions to Creditors.

VV.    The payments to the holders of the Guarantee Claims (as defined in the

Wolfman Affidavit) are "transactions" that are considered to occur not less than forty (40) days

following the Effective Date, during the separate return year of the Reorganized Debtor that

begins following the Effective Date, pursuant to Treasury Regulation Section 1.1502-76(b)(2)(i); provided, however, that this finding shall not be binding on PG&E Corporation or the Internal Revenue Service.

WW.   The Plan is not a liquidating plan as even if both of the Sale Transactions are consummated, the Reorganized Debtor will continue to operate through, among other things, its ownership of certain non-residential real property, and other miscellaneous non-cash assets.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

I.    GENERAL

1.    The findings of this Court set forth above and the conclusions of law stated herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and vice versa.

2.    To the extent permitted by applicable law, this Court hereby retains jurisdiction of this chapter 11 case: (a) pursuant to and for the purposes of section 105(a) and 1127 of the Bankruptcy Code; and (b) as set forth in section 10 of the Plan, which is incorporated herein by reference as if set forth in extenso.

3.    To the extent that any Objections to confirmation of the Plan have not been withdrawn prior to entry of this Order, are not cured by the relief granted herein or resolved as stated by the Debtor on the record of the Confirmation Hearing, all such Objections shall be, and hereby are, overruled.

4.    The Objection of King Street Capital, L.P. and King Street Capital, Ltd. is overruled.  All other Objections to confirmation of the Plan that have been withdrawn shall be, and hereby are, deemed withdrawn with prejudice.

5.      The classifications of Claims for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the ballots tendered to or returned by Creditors in connection with voting on the Plan: (a) were set forth on the ballots solely for the purposes of voting to accept or reject the Plan; (b) do not represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; and (c) shall not be binding on the Debtor or the Reorganized Debtor.

6.      The Debtor's motion for approval of the Modifications to the Plan, made in the Plan Modification Motion and/or on the record at the Confirmation Hearing, is granted, and the Plan, as modified by the Modifications, shall constitute the Plan approved hereby. Without limiting finding B, above, the terms of the Plan, as modified, are an integral part of this Order and are incorporated herein by reference and "So Ordered" in their entirety.

7.      Requests for payment of Administrative Claims that have arisen or will arise in the period from July 8, 2003 through the Effective Date, inclusive, must be filed and served pursuant to the procedures set forth in this Order and/or notice of entry of this Order, no later than forty-five (45) days after the Effective Date; *provided, however,* that no request need be filed and served for Ordinary Course Payments.  Any Entities that are required to but fail to file such an Administrative Claim request on or before the Administrative Bar Date shall be forever barred from asserting such Administrative Claim against the Debtor, the Reorganized Debtor or any of their respective property, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Claim.

8.      The Administrative Bar Date shall not apply to (a) fees payable pursuant to section 1930 of title 28 of the United States Code, or (b) TransCanada Corporation, TransCanada PipeLine U.S.A. Ltd., and TransCanada American Investments Ltd. with respect to any and all Administrative Claims arising under the TransCanada Purchase Agreement.

9.      Any and all parties requesting allowance and/or payment of a Fee Claim for any period ending on or before the Effective Date must file and serve final applications therefor no later than forty-five (45) days after the Effective Date or be forever barred from requesting allowance of such Fee Claims.

II.      PLAN CONFIRMATION AND IMPLEMENTATION

10.     The Plan is hereby confirmed pursuant to section 1129 of the Bankruptcy Code.  The absence of a reference to a specific provision of the Plan in this Order shall not, and shall not be deemed to, affect or alter this Court's ruling that every provision of the Plan has been confirmed and approved by this Court.

11.     Subject to any applicable contractual limitations, the Debtor and/or the Reorganized Debtor is hereby authorized, but not directed, to reorganize, merge, convert and/or dissolve entities and businesses that the Debtor or the Reorganized Debtor deems necessary or appropriate in order to effectuate the reorganization of the Debtor.

12.     Subject to any applicable contractual limitations, the Debtor and/or the Reorganized Debtor is authorized, but not directed, to convert any or all of its Debtor and non-debtor subsidiaries into limited liability companies, as needed, to maximize distributions to Creditors.

13.    The Debtor and Reorganized Debtor are authorized to enter into and to perform all acts that may be required in connection with any working capital facility and all notes, security or pledge agreements and other related documents and instruments.

14.    Without further order of the Bankruptcy Court, the Debtor and Reorganized Debtor are authorized and empowered to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents (including the Appendices) and take all actions and perform all acts, including expending funds, reasonably necessary or appropriate to consummate, effectuate, implement and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.

15.    In accordance with the Plan, the Official Committees have appointed John Ray as the Litigation Trustee.

16.    If the Plan becomes effective as set forth in section 9 of the Plan: (a) the Reorganized Debtor shall retain, and confirmation of the Plan shall vest in the Reorganized Debtor, all property of its estate except any property of its estate that is abandoned or transferred to any other entity, including, but not limited to, the Litigation Trust, as permitted under the Bankruptcy Code on or prior to the Effective Date; and (b) title to all such non-excepted property shall vest in the Reorganized Debtor, absolutely, unconditionally, indefeasibly and forever, on the Effective Date, free and clear of all Claims, all liens securing Claims and all Interests (except to the extent that such claims, Liens, charges, encumbrances and/or interests have been reinstated, or as otherwise expressly provided for in the Plan); provided, however, that the Litigation Trust shall not be funded with the stock or assets of any of the Debtor's subsidiaries against whom PG&E Corporation has asserted claims.  The Reorganized Debtor shall not be liable or responsible for any Claim against the Debtor or its estate or any obligation of the Debtor

17

or its estate except as expressly assumed by the Reorganized Debtor in the Plan. The Reorganized Debtor shall be the successor to the Debtor for the purposes of sections 1123 and 1129 of the Bankruptcy Code; provided however, that the Litigation Trustee shall be the representative of the Debtor's estate with respect to the Litigation Trust Claims for purposes of section 1123(b)(3)(B) of the Bankruptcy Code.

17.     In accordance with the Plan, the distributions and rights provided hereunder and under the Plan shall be in complete satisfaction, discharge and release, effective as of the Effective Date, of all Claims against and Interests in the Debtor, its estate and the Reorganized Debtor and all liens (except such liens, if any, that are preserved pursuant to the Plan) upon any property of the Debtor, its estate or the Reorganized Debtor.

18.     Distributions to holders of Allowed Claims in Class 3 shall comply with 28 U.S.C. § 959.

19.     The Reorganized Debtor shall use commercially reasonable efforts to cause its subsidiaries (other than those that are "Unrestricted Subsidiaries" within the meaning of the New Indentures) to dividend, or otherwise pay or distribute, to the Reorganized Debtor (or to intervening parent entities for payment to the Reorganized Debtor) amounts that the respective Boards of Directors of such subsidiaries reasonably determine are available to be distributed after consideration of existing and potential liabilities of such subsidiaries and the requirements of their businesses and applicable legal or contractual restrictions.

III.    SECURITIES LAW AND CORPORATE GOVERNANCE ISSUES

20.     The Reorganized Debtor and the Litigation Trustee shall use commercially reasonable efforts to obtain authorization from the Securities and Exchange Commission to

permit the transferability of the Litigation Trust Beneficial Interests as provided in the Litigation Trust Agreement.

21.    Pursuant to section 1145 of the Bankruptcy Code, the offer and sale of the Plan Securities and transactions in such securities shall be and are exempt from the registration and licensing requirements of Federal and State Securities Laws.  Pursuant to section 1145(c) of the Bankruptcy Code, the issuance of Plan Securities under the Plan is a public offering.  Subject to any transfer restrictions set forth in any of the Plan Securities, such Plan Securities may be resold and traded by any person that is not an Underwriter as unrestricted securities (and not subject to the restrictions on transfer, or registration or licensing requirements otherwise applicable under Federal and State Securities Laws).

22.    Except as and to the extent otherwise required by the customary procedures of The Depository Trust Company ("DTC"), as of the close of business on the Record Date, the various transfer registers for Classes 1, 2 and 3 (except with respect to the Old Senior Notes) as maintained by the Debtor, or its respective agents, will be deemed closed, and there will be no further changes with respect to the record holders of any of the Claims, and the Debtor will have no obligation to recognize any transfer of the Claims that occurs on or after the Record Date.  The Debtor, at its option, will be entitled to recognize and deal for all purposes under the Plan with: (a) those record holders stated on such transfer ledgers as of the close of business on the Record Date, to the extent applicable; (b) the beneficial holders identified through duly completed and returned transmittal letters; and/or (c) any other party that has provided the Debtor, the Reorganized Debtor or their agent, as the case may be, with sufficient evidence that it is a transferee of a Claim as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing or anything to the contrary in the Plan, in connection with

any distribution under the Plan to be effected through the facilities of DTC (whether by means of book-entry exchange, free delivery, deposit withdrawal at custodian ("DWAC"), or otherwise), the Debtor will be entitled to recognize and deal for all purposes under the Plan with such holders to the extent consistent with the customary practices of DTC used in connection with such distribution or with the requirements or procedures of the National Association of Securities Dealers and, in the case of the Old Senior Notes, may effect distributions under the Plan through DTC's book-entry exchange procedures.

23.     To receive the Plan Securities, holders of Allowed Class 3 Claims must designate a brokerage account, in the claimant's exact name, capable of receiving deliveries of securities by means of DWAC procedure and have the broker, maintaining such account, make a request to effect a DWAC withdrawal of its Distribution of Plan Securities on the relevant Distribution Date.  Thus, before any Distributions may be made to holders of Allowed Class 3 Claims, such holders must submit specified delivery instructions to the Debtor (to the extent such instructions have not already been made available), or its agent, setting forth, among other things, the DTC account number relating to the brokerage account into which the Plan Securities will be deposited.  To allow sufficient time to accurately complete and deliver the delivery instructions and prepare for distribution of the Class 3 Distribution of Plan Securities on the basis of such instructions, all delivery instructions must be submitted to the designated agent of the Reorganized Debtor no later than ten (10) days after such claim becomes an Allowed Class 3 Claim and not less than ten (10) Business Days before the applicable Distribution Date.  Receipt of account information after such times may substantially delay the receipt of the Plan Securities and receipt of incorrect account information may prevent the receipt of the Plan Securities.

24.     The Reorganized Debtor (or its designated agent) shall give the administrative or security agents under revolving credit, loan, letter of credit, guaranty, and similar agreements at least fifteen (15) Business Days prior written notice of each Distribution Date; provided, however, that the Reorganized Debtor (and its designated agent, if applicable) shall be entitled to conclusively rely on such proofs of claim filed by the respective administrative or security agent in the Debtor's chapter 11 case for the distribution information (including the participation percentages), unless the Debtor is otherwise advised by the respective administrative or security agent in a writing acceptable to the Debtor.  For the avoidance of doubt, nothing in this Order is intended to modify the provisions of section 5.02 of the Plan.  Notwithstanding section 5.02 of the Plan, Distributions (whether of Cash or Non-Cash Consideration) to be made in respect of the Lake Road Guarantee and the La Paloma Guarantee shall be made to the security agent for the Lake Road project and the security agent for the La Paloma project, respectively, or otherwise as directed by the security agent for the Lake Road project and the security agent for the La Paloma project or the Bankruptcy Court.

## IV.   TAX MATTERS

25.     On the Effective Date and as a result of the implementation of the Plan, absent an effective deconsolidation from the PG&E Consolidated Group arising due to other events occurring between the Confirmation Date and the Effective Date, the Reorganized Debtor will be deconsolidated from the PG&E Consolidated Group.

26.     Section 8.01(e) of the Plan shall be amended by replacing the final sentence thereof with the following:  Nothing contained herein shall be deemed to waive, release or diminish the rights of the Reorganized Debtor against its direct and indirect subsidiaries with respect to tax loss attributes or payments, all of which rights are expressly preserved.

27.    As of the Effective Date, all Creditors that actually receive Distributions under the Plan shall be conclusively deemed to acknowledge and agree, solely in their capacity as Creditors, that from and after the Effective Date, the Reorganized Debtor shall be entitled to retain, without compensation, for distribution to Creditors entitled to Distributions as provided under the Plan, all amounts recovered or received from PG&E Corporation with respect to PG&E Corporation's use, recovery in respect of, or receipt of funds relating to losses or tax attributes of (a) the Debtor for the period during which the Debtor was a member of the PG&E Consolidated Group; (b) all entities that are members of the PG&E Consolidated Group; and (c) all entities that are disregarded as entities separate from their owners where such owners are entities that become members of the NEGT Consolidated Group.

28.    As of the Effective Date, all Creditors that actually receive Distributions under the Plan shall be conclusively deemed to acknowledge and agree, solely in their capacity as Creditors, that from and after the Effective Date, the Reorganized Debtor shall be entitled to utilize, without compensation, all losses and tax attributes of: (a) the Reorganized Debtor; (b) all entities that are members of the NEGT Consolidated Group; and (c) all entities that are disregarded as entities separate from their owners where such owners are entities described in clause (b).

29.    PG&E Corporation has represented on the record of the Confirmation Hearing, that, for its 2003 tax year, it has not claimed and will not claim a worthless stock deduction in respect of NEGT in any federal tax return or other federal tax filing including an amended return.  In the event that there is a change in law affecting the ability of PG&E Corporation to claim a worthless stock deduction with respect to NEGT in a taxable year ending on or prior to the Effective Date, PG&E Corporation shall not be prevented from claiming such

deduction; provided that PG&E Corporation first obtains authority from the Bankruptcy Court to claim such worthless stock deduction.  A change in law shall mean: (a) a statute; (b) a court decision; (c) a Treasury Department regulation; or (d) a published ruling of the Internal Revenue Service; in the case of each of (a), (b), (c) or (d), enacted, issued, promulgated or published after the date hereof; a court decision, regulation or ruling may be based on past, current or future statutory or regulatory provisions).  All parties' rights to contest whether a change in law has occurred specifically are preserved.  There shall be no restriction on PG&E Corporation's ability to claim a worthless stock deduction on its California state tax return for any tax year.  PG&E Corporation represents that it has not claimed a worthless stock deduction in respect of NEGT in state or local jurisdictions other than California and it will not claim a worthless stock deduction in such jurisdictions absent providing NEGT with seven (7) days advance notice in writing of its intent to claim such worthless stock deduction.  If the Effective Date shall not have occurred during 2004, NEGT shall have the right to apply to this Court for an injunction preventing PG&E Corporation from claiming a worthless stock deduction in respect of NEGT in any federal tax return or other federal tax filing including an amended return for any taxable year ending on or prior to the Effective Date, which injunction shall incorporate the second through fourth sentences of this paragraph 29.  Notwithstanding the foregoing, PG&E Corporation's right to contest NEGT's entitlement to such an injunction on any available ground is expressly preserved.  NEGT agrees that the Effective Date shall not occur on December 31 of any year.

## V.    TRANSCANADA SALE TRANSACTION

30.    Each of the Reorganized Debtor, on the one hand, and TransCanada Corporation, TransCanada PipeLine USA Ltd., and TransCanada American Investments Ltd., on the other hand, shall remain obligated pursuant to the terms of the TransCanada Purchase

Agreement.  To the extent such agreement is approved by the Bankruptcy Court, the

Reorganized Debtor shall make adequate arrangements to satisfy: (a) the allowed or allowable

administrative expenses of TransCanada Corporation, TransCanada PipeLine USA Ltd., and

TransCanada American Investments Ltd.; and (b) all taxes, if any, resulting from the transactions

contemplated under the TransCanada Purchase Agreement as provided in the Sale Approval

Order, as defined in such agreement.

31.    Upon each Closing Date, the Reorganized Debtor shall cause the

transfer(s) and the sale(s), contemplated by the relevant Purchase Agreement, including the

TransCanada Purchase Agreement, to be made free and clear of any Liens, Claims and

encumbrances, to the full extent provided in the relevant Sale Order.

VI.    <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

32.    Notwithstanding any provision contained herein or in the Plan to the

contrary, no executory contracts or unexpired leases of the Debtor shall be deemed assumed,

assumed and assigned, or rejected by operation of the Plan or this Order unless and until the

Effective Date shall have occurred.  The Debtor is authorized to amend Schedule 7.02 to the Plan

to add or remove executory contracts and unexpired leases from such schedule at any time prior

to the Effective Date.  If the Effective Date does not occur, the deadline by which the Debtor

may assume, assume and assign or reject any executory contracts or unexpired leases (including

leases of nonresidential real property) shall be governed by any extant orders of the Bankruptcy

Court as if no confirmation of a plan has occurred in this chapter 11 case.

33.    The Reorganized Debtor shall pay the cure amounts related to the

Assumed Contracts pursuant to the procedures specifically set forth in section 7.02 of the Plan

and the Reorganized Debtor shall enjoy all of the rights and benefits under the Assumed

Contracts without the necessity of obtaining any non-debtor party's consent to the Reorganized

Debtor's assumption of any Assumed Contract.  Notwithstanding any change-in-control, default

or termination right under any Assumed Contract, the Assumed Contracts shall not be in default

and may not be terminated as a result of any change-in-control resulting from consummation of

the Plan.

34.     Pursuant to section 7.02 of the Plan, if a dispute arises between the

Reorganized Debtor and any non-debtor party to an executory contract or unexpired lease in

connection with the assumption of such contract or lease, including disputes as to whether cure

amounts should be paid in respect thereof, whether such contract or lease is an executory

contract, or has been terminated or expired, the Reorganized Debtor shall be entitled to reject

such contract or lease by notice to the non-debtor party without further order of the Bankruptcy

Court until thirty (30) days following entry of a Final Order establishing the cure amount.

35.     Pursuant to section 7.01 of the Plan, in the event that the rejection of an

executory contract or unexpired lease by the Debtor pursuant to the Plan results in damages to

the non-debtor party or parties to such contract or lease, such party shall have thirty (30) days

after the Confirmation Date to file a proof of claim for such damages.  If such party fails to file

such a proof of claim within the thirty (30) days, then such party shall be forever barred from

filing a claim or sharing in the Distributions under the Plan.

36.     Schedule 7.02 of the Plan shall be amended to include: the Purchase and

Sale Agreement, dated October 1, 2002 by and between each of NEGT Energy Trading – Gas

Corporation, NEGT Energy Trading – Power, L.P., National Energy & Gas Transmission, Inc.,

PG&E Energy Trading, Canada Corporation, CEG Energy Options Inc. and NEGT Energy

Trading Holdings Corporation, on the one hand, and each of Baupost Limited Partnership 1983

A-1, Baupost Limited Partnership 1983 B-1, Baupost Limited Partnership 1983 C-1, HB

Institutional Limited Partnership, PB Institutional Limited Partnership, YB Institutional Limited

Partnership, each a Massachusetts limited partnership, and Baupost Value Partners, L.P.-I,

Baupost Value Partners, L.P.-II and Baupost Value Partners, L.P.-III, each a Delaware limited

partnership.

VII.    <u>MISCELLANEOUS</u>

      37.    Section 1.26 of the Plan shall be amended by replacing the second

sentence thereof with the following proviso:  provided however that, US Gen New England, Inc.,

NEGT Energy Trading Holdings Corporation, NEGT Energy Trading - Gas Corporation, NEGT

ET Investments Corporation, NEGT Energy Trading - Power, L.P. and all direct and indirect

subsidiaries of the Debtor against whom PG&E Corporation has claims are not Creditors for

purposes of section 8.01(e) of the Plan.

      38.    Section 1.107 of the Plan shall be amended to provide that: *"Subordinated*

*Claim"* means any Claim against the Debtor subject to subordination pursuant to section 510 of

the Bankruptcy Code.

      39.    Section 5.01(c) of the Plan shall be amended to add the following

language at the end of the first sentence:  provided, however, that pursuant to that certain

Stipulation and Order dated April 28, 2004, by and among NEGT, the Noteholders' Committee

and the Old Indenture Trustee, that the amount of $197,797.91 on account of such fees and

expenses incurred as provided in Exhibit A to that certain Stipulation and Order dated April 28,

2004 is deemed reasonable and will be paid by the Reorganized Debtor on the Effective Date or

as soon thereafter as is reasonably practicable.

40.     Except as specifically provided herein, nothing contained in the Plan or this Order shall be deemed to be a waiver or the relinquishment of any Causes of Action that the Debtor may have or which the Reorganized Debtor or the Litigation Trustee may choose to assert in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law (including the Litigation Trust Claims).  The following claims and actions shall be waived, released and otherwise extinguished under the Plan and this Order: (a) Causes of Action (which Causes of Action are being waived and released by the Plan) against (i) holders of non-Affiliate and non-Insider Claims (excluding such Claims arising from or relating to any Purchase Agreement or any agreement in connection therewith), including without limitation, Causes of Action against any of the Creditors listed on Schedule 4.03 to the Plan, and (ii) current directors, who are being released as set forth in section 8.03 of the Plan; provided however, that there shall be no release or waiver with respect to Claims against any of the parties described in (i) and (ii) above (1) to enforce the agreements, terms and provisions of the Plan, and (2) with respect to Disputed Claims (excluding Specified Guarantee Claims) as to which Disputed Claims the Reorganized Debtor or the Litigation Trustee, as applicable, shall retain, reserve, and be entitled to assert any and all defenses and counterclaims, including without limitation, to assert a right of setoff or similar rights, limited in all cases however to the amount of the Disputed Claim, and (b) if the Closing Date occurs under the TransCanada Purchase Agreement, all preference claims and actions held by the Debtor or its estate (and the Debtor shall cause each of the non-debtor selling parties under the TransCanada Purchase Agreement not to pursue any such preference claim or action) that may be recoverable from, or could otherwise affect Gas Transmission Northwest Corporation or any of its subsidiaries after the Closing Date.  Except as provided in clauses (a) and (b) of the immediately preceding sentence, all of the rights of the

Debtor, its estate and the Official Committees to pursue the Litigation Trust Claims on behalf of the Debtor and its estate, and any defenses and counterclaims related to the Litigation Trust Claims, shall vest in the Litigation Trust.  The Litigation Trustee shall be the representative of the Debtor's estate with respect to the Litigation Trust Claims for purposes of section 1123(b)(3)(B) of the Bankruptcy Code.  All Causes of Action, including the Litigation Trust Claims, but excluding any Causes of Action specifically waived pursuant to the Plan or this Order, shall survive confirmation and the commencement or prosecution of the Litigation Trust Claims shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise.

41.    The discharge, injunction, release and other provisions contained in section 8 of the Plan are incorporated herein by reference as if set forth herein in extenso, are approved in all respects and shall be effective as provided for therein.  On the Effective Date, the provisions of Section 8 of the Plan shall be valid, binding and effective in all respects, and are hereby approved as integral parts of the Plan as fair, equitable, reasonable and in the best interests of the Debtor, its estate, creditors, interest holders and other parties in interest in the chapter 11 case, without the requirement of any further action by any party in interest in the chapter 11 case; provided, however, that the releases provided in sections 8.03 and 8.07 of the Plan with respect to estate attorneys for the Debtor and for the Official Committees are approved, but only enforceable to the fullest extent permissible by applicable non-bankruptcy law.

42.    The Debtor, the informal group of holders of the Old Senior Notes, the parties set forth on schedule 8.07(a), the Official Committees, Entities serving on either of the Official Committees, and any of their respective officers and directors (who held such positions on or after July 9, 2003), partners, employees, members, agents, advisors, affiliates, underwriters or investment bankers, and any other professional persons employed by any of them (each of the

foregoing solely in their capacity as such) are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpatory and injunctive provisions in Article XIII of the Plan (to the extent provided therein).

43.     Notwithstanding anything to the contrary in the Plan, the releases provided in section 8.03 of the Plan and the limitations on liability provided in section 8.07 of the Plan shall not limit the rights, if any, of: (a) persons who did not vote in favor of the Plan; (b) VCC Attala OL LLC, VCC Attala OP LLC, TCC Attala OL LLC, TCC Attala OP LLC, Newcourt Capital USA Inc., and BATCL-1987 II, Inc. (the "Attala Parties"); or (c) the State of Ohio Department of Taxation, with respect to amounts, if any, owed by the Debtor's former and current directors and officers referenced in sections 8.03(b) and (c) of the Plan, to the State of Ohio for tax and interest.

44.     To the fullest extent permitted under section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or securities under the Plan, including under the Sale Transactions, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, sales, use, mortgage recording or similar tax, and each recording or other agent of any governmental office shall record any such documents of issuance, transfer, or exchange without any further direction or order from the Bankruptcy Court.

45.     Pursuant to the authority of this Court granted under Bankruptcy Rule 3020(e), this Order shall not be stayed until the expiration of ten (10) days after entry of this Order and shall be effective immediately upon its entry.

46.     Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Order, upon the occurrence of the Effective Date, the Plan and the related documents, including the Appendices, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

47.     To the extent this Order and/or the Plan conflicts with: (a) the Disclosure Statement; (b) any other agreement entered into between the Debtor and any party; or (c) other orders of the Bankruptcy Court, the Plan controls the Disclosure Statement and any such agreements or prior orders, and this Order controls the Plan; provided, however, that none of the Plan, the Disclosure Statement or the Confirmation Order shall in any way modify the relief granted pursuant to: (i) the Stipulation Regarding the Lake Road and La Paloma Projects or (ii) the Stipulation Regarding the GenHoldings Projects, both of which were approved by this Court on March 15, 2004.

48.     Except as otherwise specifically provided by the Plan, confirmation of the Plan (subject to the occurrence of the Effective Date) shall: (a) discharge the Debtor, its estate and the Reorganized Debtor from any debt or liability that arose before the Confirmation Date, or which might at any time on or after the Confirmation Date arise out of or relate, directly or indirectly, to any pre-Confirmation Date acts or omissions, any debt of the kind specified in section 502(g), section 502(h) or section 502(i) of the Bankruptcy Code, all Claims treated in the Plan, all contingent and unliquidated liabilities of every type and description to the fullest extent discharge of such liabilities is permitted under the Bankruptcy Code, and all other Claims against the Debtor, its estate or the Reorganized Debtor that were outstanding, accrued or existing, or might reasonably have been asserted, on the Confirmation Date, in each instance whether or not a proof of such Claim is filed or deemed filed, whether or not such Claim is Allowed, and

whether or not the holder of such Claim has voted on the Plan; and (b) terminate all Interests in the Debtor and all rights and Interests and Claims of the holders of all Claims against and Interests in the Debtor.

49.    Except as expressly otherwise provided for in the Plan, or any order of this Court, all injunctions or stays provided for in this chapter 11 case under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence as of the date hereof, shall remain in full force and effect through and including the Effective Date and any such later date as provided for under applicable law.

50.    Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Order, the provisions of the Plan (including the schedules and appendices to, and all documents and agreements executed pursuant to, the Plan) and this Order shall be binding on: (a) the Debtor; (b) the Reorganized Debtor; (c) the United States Trustee; (d) all holders of Claims against and Interests in the Debtor, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan; and (e) each person acquiring property under the Plan.

51.    If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of any such order.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by

the provisions of this Order and the Plan and all documents related to the Plan and any amendments or modifications to any of the foregoing.

52.    Section 9.02 of the Plan shall be amended to include the following condition: Each member of the affiliated group as defined in Section 1504(a) of the IRC, of which the Reorganized Debtor will be the common parent as of the Effective Date, shall have agreed in writing to join the NEGT Consolidated Group.

53.    Unless otherwise ordered by this Court, if each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived on or before the first Business Day that is more than 179 days after the Confirmation Date (or by such later date as the Debtor proposes and the Bankruptcy Court approves, after notice and a hearing), upon motion by any party in interest, this Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, this Order shall not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If this Order is vacated pursuant to this section, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims against or Liens on property of the Debtor; or (b) prejudice in any manner the rights of the Debtor, including (without limitation) the right to seek further extensions of the exclusivity periods under section 1121(d) of the Bankruptcy Code, which exclusivity periods shall be deemed to have been extended to the date twenty (20) days after the date of entry of any order vacating this Order, subject to the rights of any party to seek to shorten the exclusivity periods after notice and hearing.

54.     The duties of each of the Official Committees will continue until the Final Closing Date when such duties shall terminate except as to: (a) any appeal or motion for reconsideration of the Confirmation Order; and (b) objections to Fee Claims.

55.     Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in this chapter 11 case after the Effective Date shall be limited to the following parties:  (a) the Reorganized Debtor and its counsel; (b) the Official Committees; (c) the United States Trustee; (d) counsel to JPMorgan Chase Bank; (e) counsel to Société Générale, (f) counsel to Citibank, N.A.; (g) counsel to PG&E Corporation; and (h) any party known to be directly affected by the relief sought.

56.     The Reorganized Debtor or its authorized agent(s) shall serve a copy of this Order by First Class Mail to all parties that have requested notices pursuant to Bankruptcy Rule 2002 and file with this Court a certificate of such service within ten (10) business days of the date of entry of this Order.

57.     The Reorganized Debtor or its authorized agent(s) shall serve (a) a notice of entry of this Order, as provided in Bankruptcy Rule 2002(f)(7) to all Creditors and Interest holders of the Debtor as of the date hereof within ten (10) business days from entry of this Order, and (b) a notice of the Effective Date to all Creditors and Interest holders of the Debtor as of the date hereof within ten (10) business days from the Effective Date.

**END OF ORDER**

cc:    Paul M. Nussbaum, Esquire
        Martin T. Fletcher, Esquire
        Whiteford, Taylor & Preston L.L.P.
        Seven Saint Paul Street; Suite 1400
        Baltimore, Maryland  21202

        Matthew A. Feldman, Esquire
        Shelley C. Chapman, Esquire
        Willkie Farr & Gallagher LLP
        787 Seventh Avenue
        New York, New York  10019-6009

        John L. Daugherty, Esquire
        Assistant United States Trustee
        6305 Ivy Lane, Suite 600
        Greenbelt, MD  20770

*1553323*