**Date signed June 29, 2004**



```
                                    _____
                                              PAUL MANNES
                                       U. S. BANKRUPTCY JUDGE
```

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| **In Re:** | * | **Case Nos. 03-30459PM & 03-30461PM** |
| **National Energy & Gas Transmission, Inc. (f/k/a PG&E National Energy Group, Inc.),** *et al.* | * | **through 03-30464PM & 03-30686PM** |
| | * | **through 03-30687PM** |
| | * | **Chapter 11 (Jointly Administered under** |
| **Debtors.** | * | **Case No. 03-30459PM)** |
| | * | |
| ****************************************** | * | |

## MEMORANDUM OF DECISION

The City of Seattle moves pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(2) for an extension of time to file an untimely proof of claim. Debtors oppose the motion. The matter came on for hearing before the court on June 16, 2004.

These widely-noticed bankruptcy cases were filed on July 8, 2003. By letter of July 18, 2003, signed by Michael L. Sinowitz, Deputy Superintendent of the Power Management Branch of the City of Seattle (hereafter "Seattle") acknowledged the filing of the bankruptcy case as well as public statements made after the filing by the Debtor, then-known-as PG & E Energy Trading-Power L.P. (hereafter "ET"), that it had ceased all transactions under the Western Systems Power Pool Agreement (hereafter "Agreement"). This followed an exchange of e-mail correspondence one week before the filing of these bankruptcy cases between representatives of

ET and Seattle wherein ET acknowledged that it had purchased $502,500.00 of energy delivered by Seattle under the Agreement in the month of June and requested an invoice in that amount. The invoice was sent out as requested. It was not paid and forms the basis for the proof of claim sought to be filed.

Following that electronic communication, ET listed the debt to Seattle as an unsecured creditor without priority on its Amended Schedule F of creditors holding unsecured claims as "contingent, unliquidated and disputed." Every other unsecured creditor, save one, was scheduled as contingent or unliquidated or disputed or a combination of these. Scheduling claims as either contingent, unliquidated or disputed, Federal Rule of Bankruptcy Procedure 3003(c)(2), implementing 11 U.S.C. § 1111(a) causes creditors holding such claims to file timely proofs of claim or have their claims disallowed. The legislative history of this section points out that this section was created because, in general, the chapter 11 debtor's schedules are accurate enough that they will suffice to determine the claims allowable in the case. HR REP NO. 595, 95th Cong, 1st Sess 405 (1977); S REP NO. 989, 95th Cong, 2d Sess 117 (1978). This section of the Bankruptcy Code was not designed by Congress to ensnare unwitting creditors, especially those whose bills were never disputed by the debtor, but rather to limit the filing of unnecessary claims with the clerk. This listing is problematic as to Seattle, because whatever defect may be alleged to exist in its claim, the claim is anything but unliquidated. Because the court has encountered debtors who have in the past attempted to use Rule 3003(c)(2) as a sword, the judges of this bankruptcy court enacted Local Bankruptcy Rule 2081-1 that provides:

> **Chapter 11 - Scheduled Claims**
>
> The debtor in a Chapter 11 case must serve on each creditor whose claim is listed on a schedule as disputed, contingent, or unliquidated, notice of that listing within fifteen (15) days after filing the schedule or within fifteen (15) days after adding a disputed creditor to a previously filed schedule. The notice must state that such creditor has the right to file a proof of claim and the failure to do so timely may prevent the creditor from voting on a plan or participating in any distribution. The debtor must file a certificate of service of the notice within five (5) days of service.

This local rule works especially well for creditors whose places of business are located far from this bankruptcy court, saving them the expense of hiring local counsel to check the court's docket.

Seattle presented testimony and affidavits to the effect that it did not receive notice of either the court's Order of November 10, 2003, establishing a bar date of January 9, 2004, for filing claims not deemed allowed under §1111(a), did not see the notices of the same in the national editions of the Wall Street Journal or Washington Post, and did not receive any notice required by the Local Rule that its claim was disputed, contingent or unliquidated.[1] Were the court to deny the motion on account of Seattle's failure to file a timely proof of claim, it would not receive any distribution by the estate.

The notices required to be mailed to Seattle and similarly situated creditors were not mailed by the Bankruptcy Noticing Center associated with the court but were sent out by a private entity, Bankruptcy Services, LLC of New York City. No competent evidence was

---

[1] A Notice to Creditors with Disputed, Contingent, Unliquidated and/or Unfixed Claims dated November 13, 2003, and characterized by the sender as "the CUD Notice" was said to have been mailed to various parties. While assuming that such a motion was sent out, the court has been unable to find the text of the Notice in this file.

offered to enable the Debtors to avail themselves of the presumption of delivery and receipt of mail properly mailed. *Benner v. Nationwide Mutual Ins. Co.*, 93 F.3d 1228, 1234 (CA4 1996).

It is admitted that Seattle had actual notice of the filing of the bankruptcy case soon after filing. Its principal witness, Mr. Sinowitz, testified that the reason that he did not file a proof of claim promptly was that he anticipated that he would receive an official notice of the need to file claims. This evidence was not contradicted. Bankruptcy Rules 4004(a) and 4007(c) set bar dates for filing complaints to object to an individual debtor's discharge or to the discharge of a particular debt. Courts generally hold that creditors who have actual notice of the filing of the bankruptcy case but have not received notice of the bar dates are nevertheless on inquiry notice of the administrative requirement. *GAC Enter., Inc. v. Medaglia (In re Medaglia)*, 52 F.3d 451, 457 (CA2 1995); *Ramos v. Compton (In re Compton)*, 891 F.2d 1180, 1184 (CA5 1990); *Byrd v. Alton (In re Alton)*, 837 F.2d 457, 458-459 (CA11 1988); *In re Duncan*, 125 B.R. 247, 250 (BC W.D. MO 1991); *MSI Fin. Group, Inc. v. Mullins (In re Mullins)*, 172 B.R. 1015 (BC N.D. GA 1994). But in the circumstances of this case, Seattle is subject to no such imposition of a duty to make inquiry. Having received verification of the amount owed to it from ET in the week of the bankruptcy filing, it had not the slightest reason to suspect that its claim would be scheduled as disputed, unliquidated or contingent, thus requiring the filing of a timely proof of claim. Nor did it receive the protective notice required by Local Bankruptcy Rule 2081-1.

But it did not file a timely proof of claim. It urges that its failure to do so was attributable to excusable neglect. The court is fortunate to have the decision of the Supreme Court in *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993) as a beacon light to assist in interpreting Bankruptcy Rule 9006(b)(1). In its opinion, the Court looked to

Federal Rule of Civil Procedure 60(b)(1) as a point of reference.  *Pioneer* notes "for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."  *Pioneer,* 507 U S at 394.  The Court goes on to instruct lower courts that:

> This leaves, of course, the Rule's requirement that the party's neglect of the bar date be "excusable."  It is this requirement that we believe will deter creditors or other parties from freely ignoring court-ordered deadlines in the hopes of winning a permissive reprieve under Rule 9006(b)(1).  With regard to determining whether a party's neglect of a deadline is excusable, we are in substantial agreement with the factors identified by the Court of Appeals.  Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.  (footnote omitted)  These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. (citation omitted)

*Pioneer,* 507 U. S. at 395.

The court will grant the motion.  It finds that the failure of Seattle to have ET's schedules checked to verify the correct listing of its claim was negligent.  Because the rapid change of position of ET regarding the status of the Seattle claim that was accomplished *sub rosa*, the court finds Seattle's neglect to be excusable.  The court finds no prejudice to ET.  There could be no change of position on account of Seattle's failure to file a proof of claim.  While the court is troubled by Seattle's delay in filing this motion, the court is not sufficiently disturbed to make a finding that the delay had any meaningful impact upon this bankruptcy case.  The court finds that Seattle acted in good faith.  An appropriate order will be entered.

cc:    David C. Roseman - *counsel for City of Seattle*
       Steven Wilamowsky - *counsel for Debtors*
       Martin T. Fletcher - *co-counsel for Debtors*
       All parties requesting notice

**End of Memorandum Decision**