Date signed June 24, 2005



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| In Re: | * | |
| NATIONAL ENERGY & GAS | * | Case No.   03-30459(PM) and 03-30461(PM) |
| TRANSMISSION, INC, (f/k/a PG&E | * | through Case Nos. 03-30464(PM) |
| NATIONAL ENERGY GROUP, INC.) *et al.* | * | and 03-30686(PM) |
| **Debtors** | * | through 03-30687(PM) |
| | * | (Jointly Administered under |
| ************************************** | * | Case No.: 03-30459 (PM)) |

## MEMORANDUM OF DECISION

Before this court is a Request for Payment of an Administrative Expense Claim in the sum of $157,247.14, plus interest, costs, expenses and attorneys' fees, filed by Pacific Gas and Electric Company ( "PG&E") against NEGT Energy Trading - Gas Corporation ("ET Gas"). The matter came before the court on a hearing on June 22, 2005.

This administrative expense claim arises out of a Noncore Balancing Aggregation Agreement dated May 1, 1998 (the "NBAA") entered into between PG&E and ET Gas, pursuant to which ET Gas, acting as a "Balancing Agent", agreed to undertake the balancing obligations for its end use customers. On July 7, 2003, the day before the filing of these bankruptcy cases, PG&E provided ET Gas with a termination notice based on California Public Utilities Commission Tariff Gas Rule 25 ("Gas Services-Customer Creditworthiness and Payment Terms"). The termination notice indicated that ET Gas would remain liable for obligations resulting from imbalances incurred prior to termination, as provided for under California Public Utilities Commission Tariff Gas Rule

17 ("Meter Tests and Adjustment of Bills for Meter Errors").

On August 12, 2004, PG&E notified ET Gas in writing of a gas supply imbalance caused by an underdelivery.  ET Gas was again apprised of the situation by a Cumulative Imbalance Statement for September 2004, which indicated that "[a]ny imbalance not traded by October 27, 2004 will be sold to [ET Gas] at $.6283 per therm."  ET Gas did not undertake to resolve the underdelivery and, as a result, its obligations to PG&E were cashed out in the amount of $157,247.15.

PG&E filed its Request for Payment of an Administrative Expense Claim after ET Gas did not respond to its requests for payment.  ET Gas objected to this request, asserting that PG&E's claim cannot be characterized as an administrative expense because it arose pre-petition - the NBAA was entered into prior to ET Gas's bankruptcy filing and the gas supply imbalance adjustment that is the basis for PG&E's request covers periods preceding the petition date.  In its reply to ET Gas's objection, PG&E argues that its claim is based upon post-termination adjustments inasmuch as the imbalance was not identified until July 2004 and did not give rise to monetary liability until ET Gas failed to resolve the underdelivery by October 27, 2004.

The court agrees with ET Gas that PG&E's claim does not qualify for payment as an administrative expense.  Administrative expenses under the Bankruptcy Code include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]"  11 U.S.C. § 503(b)(1)(A).  If allowed, such expenses have first priority among unsecured claims against the bankruptcy estate.  11 U.S.C. § 507(a)(1).  A "debtor" under the Bankruptcy Code is one concerning whom "a case under the [Bankruptcy Code] has been commenced" and a case is commenced only upon the filing of a petition in bankruptcy.  11 U.S.C. §§ 101(13), 301.  Therefore, a debtor-in-possession in Chapter 11 proceedings only comes into being as a legal entity when a petition is filed, so that only expenses incurred by that entity can qualify as administrative expenses.  In re White Motor Corp., 831 F.2d

2

106, 110 (CA6 1987).

In order for a claim to qualify as an administrative expense, "'(1) the claim must arise out of a post-petition transaction between the creditor and the debtor-in-possession (or trustee) and (2) the consideration supporting the claimant's right to payment must be supplied to and beneficial to the debtor-in-possession in the operation of the business.'" In re Merry-Go-Round Enterprises, Inc., 180 F.3d 149, 157 (CA4 1999) (quoting In re Stewart Foods, Inc., 64 F.3d 141, 145 n.2 (CA4 1995)). See also In re Servisense.com, Inc., 382 F.3d 68, 72 (CA1 2004) ("For a claim to be entitled to administrative priority in bankruptcy, it must arise after the bankruptcy petition has been filed.") (citing In re Mammoth Mart, Inc., 536 F.2d 950, 954 (CA1 1976)).

PG&E's claim does not meet the first prong of the standard set forth in Merry-Go-Round. ET Gas filed its bankruptcy petition on July 8, 2003; and, inasmuch as PG&E's claim is based upon the NBAA, into which ET Gas and PG&E entered during May 1998, that claim did not arise out of a post-petition transaction entered into with the debtor-in-possession. Rather PG&E's claim arose out of a pre-petition transaction with a pre-petition debtor.

PG&E's attempt to characterize the gas supply imbalance adjustment as a post-petition transaction is misguided. The fact that the imbalance was not discovered until after ET Gas filed its bankruptcy petition is irrelevant.[1] In In re Jartran, Inc., 732 F.2d 584 (CA7 1984), a creditor sought to have a debt arising out of a pre-petition contract to place advertisements in a telephone directory treated as an administrative expense on the ground that the advertisements were published after the petition date. The Seventh Circuit rejected this argument, stating that "the key fact is that the irrevocable commitment by [the parties] ... to place the ads was made before the filing of the petition in bankruptcy." Id. at 586. Similarly, in the instant matter, ET Gas and PG&E entered into

---

[1]As pointed out in the course of argument on this application, the gas supply imbalance arose because of a defective meter measuring gas flow.

the NBAA before the filing of the bankruptcy petition and this fact precludes PG&E's claim from being characterized as an administrative expense.

Accordingly, the court will deny PG&E's Request for Payment of an Administrative Expense Claim. An appropriate order will be entered.


cc:   Jeffrey L. Tarkenton, Esq.
      Womble Carlyle Sandridge & Rice
      1401 Eye Street, NW, 7th Floor
      Washington, DC 20005

      Gary M. Kaplan, Esq.
      Howard, Rice, Nemerovski, Canady, Falk & Rabkin
      Three Embarcadero Center, 7th Floor
      San Francisco, CA 94111-4065

      Steven Wilamowsky, Esq.
      Jessica S. Etra, Esq.
      Willkie Farr & Gallagher LLP
      787 Seventh Avenue
      New York, NY 10019-6099

      Paul M. Nussbaum, Esq.
      Martin T. Fletcher, Esq.
      Dennis J. Shaffer, Esq.
      Whiteford, Taylor & Preston, L.L.P.
      Seven Saint Paul Street, Suite 1400
      Baltimore, MD 21202-1626

      John L. Daugherty, Esq., Assistant United States Trustee
      6305 Ivy Lane, Suite 600
      Greenbelt, MD 20770

**End of Memorandum of Decision**