Date signed November 07, 2005



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRU_ _ _ _ _ _ _
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| NATIONAL ENERGY & GAS | : | Case No. 03-30459PM and 03-30461PM |
|  TRANSMISSION, INC. (f/k/a PG&E | : | through 03-30464PM and 30-30686PM |
| NATIONAL ENERGY GROUP, INC.) | : | through 03-30687PM (Jointly Administered |
|  et al. | : | under **Case No. 03-30459PM** |
| Debtors | : | Chapter 11 |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

Pacific Gas & Electric Company ("PG&E") filed a Motion on July 19, 2005 (D.E. 3234), seeking an order deeming as  timely filed what are termed its Reinstated Claims against NEGT Energy Trading - Gas Corporation ("ET Gas") and NEGT Energy Trading Holdings Corporation ("ET Holdings").  The claims were filed on April 20, 2005, nearly 15 months after the bar date for filing claims in this case.  The Debtors opposed the Motion (D.E. 3274).  The matter came before the court for hearing on August 24, 2005.

This matter follows on this court's Order entered June 24, 2005 (D.E. 3174), that denied the Request for Application for Payment of an Administrative Expense Claim in the sum of $157,247.14.  The court adopts by reference the Memorandum of Decision entered June 27, 2005 (D.E. 3175), with regard to the statement of facts underlying this dispute.  The claim in dispute resulted from the "cashing out" of a pre-filing gas delivery imbalance with ET Gas.[1]  Because

---

[1]PG&E's claim against ET Holdings is based upon a Guarantee Agreement dated December 22, 1998, pursuant to which ET Holdings guaranteed ET Gas's indebtedness to PG&E.

-1-

this imbalance arose prior to the filing of the case, the claim was not entitled to first priority status as an administrative expense.  The applicable category of  administrative expense is defined in 11 U.S.C. § 503(b) as "the actual, necessary costs and expenses of preserving the estate . . . ."  Administrative expenses are endowed by 11 U.S.C. § 507(a)(1) with the highest priority on distribution of estate assets.  Having been repulsed in its attempt to obtain the highest priority, PG&E now seeks relief in order to enable it to file an untimely proof of claim under Fed. Rule of Bankruptcy Proc. 3003(c)(3) that provides:

> **Rule 3003.  Filing Proof of Claim or Equity Security Interest in Chapter 9 Municipality or Chapter 11 Reorganization Cases**
>
> (c) FILING PROOF OF CLAIM.
>
> *            *            *            *            *
>
> (3) *Time for Filing*.  The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

It seeks comfort in the provisions of Fed. Rule of Bankruptcy Proc. 9006(b)(1) that provides:

> **Rule 9006.  Time**
>
> (b) ENLARGEMENT.
>
> (1) *In General*. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

As brought out in the course of the hearing on the administrative claim, a defective meter said to have been discovered after PG & E's withdrawal of its Gas Transportation, Storage and Balancing Claim (the "Gas Claim") is allegedly the cause of the failure to include this account in the timely Proof of Claim filed on January 8, 2004, in the amount of "at least $2,433,924.66." The Gas Claim was withdrawn by a pleading filed June 7, 2004 (D.E. 1653), cautioning that the

-2-

"withdrawal of the Claim is based on the satisfaction of the liability set forth in the Claim based on the application of security provided with respect to the Debtor's obligations set forth in the Claim (as specifically contemplated in the Claim) pursuant to applicable law. PG&E expressly reserves the right to reinstate or reassert the Claim in the event that it is required to adjust any amounts previously applied to the Debtor's obligations set forth in the Claim."

However, the matter is stated, PG&E's filed claim was satisfied by payment in full. What the court has before it is an attempt to file a claim more than a year after the bar date of January 9, 2004, to supplement a claim for which PG&E was paid in full, because this late filing is said to have been the product of its alleged excusable neglect. The difficulty for PG&E is that it continually treated this obligation as if it were a claim arising after the filing of the case. For example, in his letter of January 20, 2005, to the Debtor and its counsel, which letter is attached to the instant motion, Gary M. Kaplan, attorney for PG&E, asserts that the statement contained in the motion filed by Debtor to extend the exclusivity period under 11 U.S.C. § 1121(d) "that 'post-petition obligations that are being incurred are being paid as they become due' . . . is not accurate, at least with respect to PG&E.'" Only after confirmation of the Chapter 11 Plan and the denial of its attempt to have this account allowed as an administrative expense has PG&E changed its position and decided that it would settle for allowance of the debt as an unsecured claim without priority.

The issue presented is whether the failure by PG&E to characterize this claim properly, once having been made aware of its existence, amounts to excusable neglect. *See Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (CA4 1996) ("'Excusable neglect' is not easily demonstrated, nor was it intended to be."). In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380 (1993), the Supreme Court was called upon to determine under Rule 9006(b)(1) whether an attorney's inadvertent failure to file a proof of claim within the deadline set by the court can constitute excusable neglect. This case is the keystone of authority on the issue before the court. The Court held that, because of a dramatic ambiguity in the notification of the bar date, counsel's failure to notice it was, under all the circumstances of the case, excusable. *Id*. at 398-99. However, the Court cautioned:

> There is one aspect of the Court of Appeals' analysis, however, with which we disagree. The Court of Appeals suggested that it would be

-3-

inappropriate to penalize respondents for the omissions of their attorney, reasoning that "the ultimate responsibility of filing the . . . proof[s] of clai[m] rested with [respondents'] counsel." *Ibid*. The court also appeared to focus its analysis on whether respondents did all they reasonably could in policing the conduct of their attorney, rather than on whether their attorney, as respondents' agent, did all he reasonable could to comply with the court-ordered bar date. In this, the court erred.

In other contexts, we have held that clients must be held accountable for the acts and omissions of their attorneys. In *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed. 2d 734 (1962), we held that a client may be made to suffer the consequence of dismissal of its lawsuit because of its attorney's failure to attend a scheduled pretrial conference. In so concluding, we found "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Id.*, at 633, 82 S.Ct., at 1390. To the contrary, the Court wrote:

> "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notice would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Id.*, at 633-634, 82 S.Ct., at 1390 (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1880)).

This principle also underlay our decision in *United States v. Boyle*, 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed. 2d 622 (1985), that a client could be penalized for counsel's tardy filing of a tax return. This principle applies with equal force here and requires that respondents be held accountable for the acts and omissions of their chosen counsel. Consequently, in determining whether respondents' failure to file their proofs of claim prior to the bar date was excusable, the proper focus is upon whether the neglect of respondents *and their counsel* was excusable.

507 U.S. at 396-97.

*Pioneer* instructs that clients must be held accountable for the acts and omissions of their attorneys. *Id*. at 397-398. Here, someone, presumably counsel, after discovery of the imbalance, made a determination to pursue the Gas Claim as an administrative expense and therefore qualify to receive payment at the rate of one hundred cents on the dollar, rather than receive the pro rata dividend accorded to holders of similar claims as unsecured creditors without priority. When that effort failed, PG&E fell back to its second position that its failure to file a timely proof of

-4-

claim was the product of excusable neglect.

Attached to Debtor's objection to the Proof of Claim is a copy of PG&E's opposition to a motion requesting similar relief in PG&E's bankruptcy case filed in the Northern District of California. That pleading is instructive. Citing *In re Cahn*, 188 B.R. 627 (BAP CA9 1995), PG&E, in its opposition to the claim of American Meter Company, points out that the late claimant has the burden of showing excusable neglect for not having filed a timely proof of claim. *See In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 89 (BC N.D. CA. 2004). *See also In re Enron Corp.*, 419 F.3d 115 (CA2 2005) (denying motion to amend proof of claim to include parent corporation of debtor or to file a new, timely proof of claim against parent).

*Pioneer* describes a four-part test for determining whether an act of neglect can be deemed to be excusable: (1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. 507 U.S. at 395. The court will consider each *Pioneer* factor. Under a liquidating plan such as the one at hand, the court finds no danger of prejudice to the **Debtor**, because the real parties in interest are the other creditors of the Debtor whose dividend may be reduced by the allowance of this Claim. Notice of the gas imbalance adjustment was transmitted to the Debtor on August 12, 2004 (D.E. 3019). This Motion was filed July 19, 2005, a delay of 11 months – a considerable time - after the date of the alleged discovery. On the other hand, the delay does not cause a great impact upon the administration of this case, as there are several other matters pending that serve to delay the completion of this case. As demonstrated above, there were two reasons for the delay, besides the defective meter: first, the attempt to collect a pre-filing claim that was clearly in violation of the automatic stay, and second, when that failed, the decision by the claimant to pursue an administrative claim. Aside from the defective meter, everything else was well within the control of the claimant. Finally, the court finds that the delay was a purposeful one on the part of the creditor in order to secure an advantage to which it was not entitled. Here the court finds that PG&E did not act in good faith. After consideration of these factors, the court finds that the claimant has not sustained its burden of proof that the late filing of the claim is attributable to "excusable neglect." Moreover, given the efforts of PG&E described above, a consideration of the equities of this situation does not cause the court to grant the relief sought,

even if the court were to find excusable neglect.

The next issue presented is whether PG&E can salvage this claim by labeling it as merely an amendment of its filed Claim. Two claims were filed on January 8, 2004, both in the sum of $2,433,924.66. Claim No. 336 was filed against ET Gas , and Claim No. 338 was filed against ET Holdings, which entities are both former affiliates of PG&E. PG&E withdrew its proof of claim as a matter of right pursuant to Fed. Rule of Bankruptcy Proc. 3006. As no objection to the proof of claim had been filed, PG&E had the unfettered and unilateral right to withdraw the proof of claim. Rule 3006 provides:

### Rule 3006.  Withdrawal of Claim; Effect on Acceptance or Rejection of Plan

A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession, and any creditors' committee elected pursuant to § 705(a) or appointed pursuant to § 1102 of the Code. The order of the court shall contain such terms and conditions as the court deems proper. Unless the court orders otherwise, an authorized withdrawal of a claim shall constitute withdrawal of any related acceptance or rejection of a plan.

As under Fed. Rule of Civil Proc. 41(a), the voluntary dismissal renders the proceedings a nullity and leaves the parties as if the claim had never been filed. *See Smith v. Dowden*, 47 F.3d 940, 943 (CA8 1995); *In re Frank*, 322 B.R. 745, 753 (BC MDNC 2005); *In re 20/20 Sport, Inc*, 200 B.R. 972, 976 (BC SDNY 1996). The reservation of rights as to any of the other claims asserted against the Debtor or any of its affiliates accomplished nothing. There were no such claims then asserted, and the bar date ran as to any existing and unasserted claims. While it is true this nullification rule generally arises when a would-be creditor desires to avoid forfeiture of its right to trial by jury in cases filed by the trustee for fraudulent conveyances or to argue the absence of jurisdiction, the impact of the rule is not so limited. *See generally, Collier on Bankruptcy*, ¶ 3006.01 (15th ed. rev. 2005).

The motion is denied in all respects. An appropriate order will be entered.

cc:
Gary M. Kaplan, Esq., Howard Rice Nemerovski Canady Falk & Robkin,
          Three Embarcadero Center, 7th Floor, San Francisco, CA 94111-4024
Dennis J. Shaffer/Paul Nussbaum/Martin Fletcher, Esq., Whiteford Taylor & Preston LLP,
          Seven Saint Paul Street, Baltimore, MD 21202
Steven Wilamowsky/Jessica Etra, Esq., Willkie Farr & Gallagher LLP
          787 Seventh Avenue, New York, NY 10019-6099
John L. Daugherty, Esq. United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770

**End of Memorandum**