Date signed November 09, 2005



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| NATIONAL ENERGY & GAS | : | Case No. 03-30459PM and |
|   TRANSMISSION (f/k/a PG&E | : | 03-30461PM through 02-30464PM |
|   NATIONAL ENERGY GROUP, INC.), | : | (Jointly Administered Under |
|   et al. | : | Case No. 03-30459PM) |
|                           Debtors | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

## MEMORANDUM OF DECISION

On January 27, 2005, the Debtors filed Objections to the proofs of claims filed by various Attala entities. The proofs of claim objected to include: claims numbered 309 and 631 filed by VCC Attala OP LLC and claims numbered 304 and 630 filed by TCC Attala OP LLC (together, the "Owner Participants"); claims numbered 308 and 629 filed by BATCL-1987 II, Inc. and claims numbered 306 and 628 filed by Newcourt Capital USA, Inc. (together, the "Sole Owners"); and claim number 307 filed by TCC Attala OL LLC and claim number 305 filed by VCC Attala OL LLC (together, the "Owner Lessors"). Collectively, the parties refer to the Owner Participants, Sole Owners and Owner Lessors as the "Attala Owner Entities." The Attala Owner Entities responded to the objections to claims, and as part of that response, moved for

partial summary judgment. Following a hearing on the objections to claims, held on August 11, 2005 and August 12, 2005, the court issued a tentative ruling, and requested that the parties submit additional memoranda. The Debtors and the Attala Owner Entities each filed memoranda and responses. Upon consideration of the additional memoranda, as well as the previous filings and hearings, the court has determined to sustain the Debtors' objections to the claims of the Owner Lessors and Sole Owners, and overrule, in part, the Debtors' objections to the Owner Participants' claims, and allow the claims in a reduced amount as detailed below.

In their objections to the Attala Owner Entities' claims, the Debtors argue that the claims of the Owner Lessors and Sole Owners should be disallowed. Also, they argue and that the claims of the Owner Participants should be disallowed, but in the alternative, allowed in the reduced amounts of $6,085,505 for the VCC Attala OP LLC claim (claim number 631) and $1,520,876 for the TCC Attala OP LLC claim (claim number 630).[1] The Attala Owner Entities provided little, or no response to the arguments regarding the claims of the Owner Lessors and Sole Owners. As to the objections to the claims of the Owner Participants, the Attala Owner Entities argued that the claims should be allowed in full, as filed, and initially disputed any suggestion that the claims be reduced, but in later filings, accepted, with reservation, the argument that a discount rate was applicable to the Owner Participants' claims.

As background, in 2002, Attala Generating Company, a subsidiary of the debtor, was sold to the Owner Lessors.[2] The Owner Lessors then leased back the generating facility to Attala

---

[1] The Debtors request that claims number 309 and 304, filed by VCC Attala OP LLC and TCC Attala OP LLC, respectively, be disallowed as superceded by claims numbers 631 and 630, referenced above.

[2] The purchase of Attala Generating by the Owner Lessors was funded, in part, by their equity owners, the Owner Participants. BATLC-1987 II and Newcourt Capital USA were the sole owners of the Owner Participants.

Generating. Attala Generating eventually defaulted on the lease payments, and the generating facility was sold at a foreclosure sale.

As part of the sale/leaseback transaction, the parties entered into a number of agreements. The relevant agreements for these objections to claims include: (1) a tax indemnity agreement; (2) an indemnity guarantee; (3) a participation agreement and (4) a tolling agreement guaranty. The tax indemnity agreement was entered into between Attala Generating, the Owner Participants and the Sole Owners. The indemnity guarantee was entered into between NEGT and the Owner Participants, and guaranteed Attala Generating's payments under the tax indemnity agreement and participation agreement. Under the tolling guaranty, NEGT guaranteed Attala Energy Company, LLC's (a non-filing subsidiary of the debtors) toll payments to Attala Generating.

With regard to the objections to the claims of the Owner Lessors and Sole Owners, the Debtors argue that neither group is entitled to payment under any of the documents at issue here. The Owner Lessors' claim are under the Tolling Guaranty, and the Debtors' argue that all claims under the Tolling Guaranty were settled as part of an April 2004 compromise entered into in this bankruptcy case. As to the Sole Owners, the Debtors argue that they seek payment under an Indemnity Guaranty, and that the Sole Owners are not parties to the Indemnity Guaranty, and thus have no right to assert a claim under the agreement. The Attala Owner Entities offered little to no argument in response to these assertions by the Debtors. Based upon the objections to claims and the relevant documents submitted in support thereof, responses and argument at the hearings, the court has determined to sustain the Debtors' objections to the claims Owner Lessors and Sole Owners, claims numbered 308, 629, 306, 628, 307 and 305.

As to the objections to the claims of the Owner Participants, the Debtors argue that any

claims of the Owner Participants arise under the tax indemnity agreement, and request that the claims be disallowed, or allowed in reduced amounts. The Debtors argue that the Owner Participants' claims should be limited to their lost tax benefits under the tax indemnity agreement, as this was the intention of the parties in entering into the agreement. The Attala Owner Entities argue that the Owner Participants' claims arise under the tax indemnity agreement and participation agreement (and indemnity agreement), and that the claims should be allowed as filed. They further argue that the plain language of the tax indemnity and participation agreements supports their claims.

The total amount sought by the Owner Participants is $240,091,351; VCC Attala OP filed a proof of claim in the amount of $192,073,089 and TCC Attala OP filed a proof of claim in the amount of $48,018,272. As noted above, the Debtors argue that these claims should either be disallowed or reduced to $6,085,505 and $1,520,826, respectively.

The court has determined to allow the Owner Participants' claims, but at a reduced amount. The tax indemnity agreement provides that the Owner Participants are entitled to certain United States federal, state and local income tax benefits, and, under the agreement, Attala Generating "agreed to indemnify the Owner Participant[s] under certain circumstances for the loss of such benefits." The tax indemnity agreement further provides that in certain circumstances, Attala Generating will pay to the Owner Participants a lump sum amount that "shall be sufficient to preserve Owner Participant's Net Economic Return . . . ." The parties do not dispute that the foreclosure triggered Attala Generating's obligation under the tax indemnity agreement to indemnify the Owner Participants. Nor do the parties disagree that by virtue of the indemnity guarantee, NEGT is liable to the Owner Participants as NEGT guaranteed Attala Generating's payments under the tax indemnity agreement.

The question is, therefore, how much is owed to the Owner Participants under the tax indemnity agreement. The agreement specifically provides that if certain events occur, such as what happened here, Attala Generating will pay to the Owner Participants a lump sum payment in an amount sufficient to preserve the Owner Participants' "net economic return." The term "net economic return" is not defined in the tax indemnity agreement, but is defined in the participation agreement. The two agreements were entered into in connection with the same transaction, and while the tax indemnity agreement does not refer to the participation agreement, the definition provided in the participation agreement should apply.

Per the participation agreement, "net economic return" is defined as: "(a) the Owner Participant's anticipated net after-tax yield, calculated according to the multiple investment sinking fund method analysis, and (b) aggregate GAAP income and after-tax cash flow." The Attala Owner Entities argue that using this formula, their claims total $240,091,351. They further argue that in the alternative, if a discount rate is necessary, a rate of 2.58 percent is appropriate, reducing the total amount of their claims to $178,983,599. The Debtors, as noted above, principally argue that the claims should be reduced to cover actual lost tax benefits only, and do not submit their own calculation of the amount of the Owner Participants' net economic return. The Debtors, submit that the Owner Participants' claim should be subject to a discount rate of 12 percent, resulting in a claims total of $48,753,903.

Under 11 U.S.C. §502(b), if an objection to claim if filed, the court must determine the amount of such claim as of the date of the filing of the petition. In <u>In re U.S. Airways, Inc.</u>, 303 B.R. 784, 793 (Bankr. E.D. Va. 2003), the court, in deciding an objection to the claim of the Pension Benefit Guaranty Corporation, noted as follows:

> In fixing the amount of a claim 'as of the date of the filing of the petition,' there is no dispute that the court must discount future damages to present value. . . . Thus,

> if [the creditor] held merely a common-law indemnity claim . . . there can be little doubt that this court would have full authority to determine an appropriate discount rate"

<u>U.S. Airways</u>, 303 B.R. at 793.  The Court has determined to accept the Debtors' proposed 12 percent discount rate, based upon the Debtors' argument regarding the risk involved with the Owner Participants' investment.  Therefore, the Owner Participants' claims will be allowed in a total amount of $48,753,903; or $9,750, 780 to the TCC Attala OP claim and $39,003,123 to the VCC Attala OP claim.

An appropriate order will be entered.

**End of Memorandum of Decision**