Date signed February 21, 2006



_____

**PAUL MANNES**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

**In re:**

| | |
|---|---|
| **National Energy & Gas Transmission, Inc.** | **Case No. 03-30459PM\*** |
| **(f/k/a PG&E National Energy Group, Inc.),** | **Chapter 11** |
| ***et al.,*** | |
| | **Jointly administered with Case Nos.** |
| **Debtors.** | **03-30461 through 03-30464 and 03-30686** |
| | **through 03-30687** |

_____/

### MEMORANDUM OF DECISION

Before the court is the motion of National Energy & Gas Transmission, Inc. ("NEGT")

for an order disallowing additional claims asserted by Citibank N.A. ("Citibank"), acting as

administrative and security agent for the Lake Road and La Paloma project lenders ("the

Lenders") and the opposition thereto filed by the Steering Committee of the Lake Road and La

Paloma project lenders.  A hearing was held on February 8, 2006.  After review of the record and

consideration of the arguments of the parties, the court finds that further discovery and argument

are unnecessary.  The court will disallow the Lenders' additional claims.

### Undisputed Facts

NEGT guaranteed debt of certain non-debtor entities related to the construction of the

Lake Road and La Paloma projects.  In 2002, NEGT announced that it would not fulfill its

guarantee obligations and, on July 8, 2003, filed this bankruptcy case under chapter 11.  Rather

than pursue collection from the various non-debtor entities, Citibank filed a proof of claim

against NEGT based on two Guarantee Agreements, both dated April 6, 2001, in the amount of

$623,909,778.81, plus additional unliquidated and contingent amounts.  Both projects were

transferred to the Lenders in March, 2004.  In May, 2004, NEGT's Plan of Reorganization was

confirmed.  The Lenders' general unsecured claims were allowed against NEGT for

$385,001,291.45 as to the La Paloma project and $238,908,487.38 as to the Lake Road project.[1]

In November, 2005, Citibank, on the Lenders' behalf, made a demand to NEGT of an additional

$10,616,672.14 for postpetition expenses and $90,872,297.29 for postpetition interest accruing

from July 8, 2003.

## Analysis

The Lenders make four arguments in support of their claim:  (1) that § 502(b)(2) of the

Bankruptcy Code is inapplicable because the claim for additional amounts is not a claim against

NEGT but a claim for amounts accruing against the non-debtor entities whose debt was

guaranteed by NEGT; (2) that there are equitable considerations for allowance of the additional

amounts; (3) that this court should ignore its decision in *In re Smith*, 206 B.R. 113 (BC Md.

1997), and follow the minority view; and (4) that the Lenders are being unfairly discriminated

---

[1] Schedule 4.03 of the NEGT plan, entitled "Allowed Amounts of Certain General Unsecured Claims," described the Lenders' allowed claims and, in Footnote 1, provided:

> Each amount set forth herein may be increased by the amount of the aggregate amount of unpaid interest and all other amounts payable in connection with the obligations due and owing under the applicable documents subject to (i) any limitations contained in such documents and (ii) applicable law, as determined by the Bankruptcy Court.

against because NEGT has agreed to allow certain postpetition expense claims of other

unsecured creditors.[2]

The Lenders' position that the additional interest is not accruing on any obligation of

NEGT must fail.  The claim for postpetition interest arises under the Guarantee Agreements.

This is a "claim" against the debtor, NEGT.[3]  Section § 502(b)(2) explicitly prohibits unsecured

creditors from recovering postpetition interest on a "claim" accruing after the filing of a

bankruptcy petition.  To hold otherwise would be contrary to the plain and unambiguous

language of § 502(b)(2) and render § 506(b) meaningless.[4]  Section § 502(b)(2) prohibits the

---

[2]  Both the Lenders' equitable argument and the unfair discrimination argument are without merit.  This court cannot seriously consider these arguments as the Lenders have been adequately represented throughout these proceedings.  The arguments are unworthy of further analysis.

[3]  "Claim" means--

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]

11 U.S.C. § 101(5).

[4]  Section 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

The Lenders' position violates a cardinal rule of statutory construction.  "It is a classic canon of statutory construction that courts must 'give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous.'" *Discover Bank v. Vaden*, 396 F.3d 366, 369 (CA4 2005) *quoting United States v. Ryan-Webster*, 353 F.3d 353, 366 (CA4 2003).

Lenders from collecting postpetition interest against NEGT, a debtor-guarantor, and, therefore,

the claim for unmatured interest is disallowed.[5]

Postpetition interest and expenses are recoverable only by secured creditors to the extent

that their claims are oversecured.  11 U.S.C. § 506(b).  This court agrees that the reasoning in *In*

*re Smith* represents settled law; accordingly, the Lenders' claim for postpetition expenses is

disallowed.

An appropriate order will be entered.

cc:    Paul M. Nussbaum
       Martin T. Fletcher
       Dennis J. Shaffer
       Whiteford, Taylor & Preston
       Seven Saint Paul Street, Suite 1400
       Baltimore, Maryland 21202

       Matthew A. Feldman
       Steven Wilamowsky
       Jessica S. Etra
       Willkie Farr & Gallagher LLP
       787 Seventh Avenue
       New York, New York 10019-6009

---

[5] Although not dispositive, this court finds instructive the analysis with respect to
§ 502(b)(6) in the case of *In re Loewen Group Int'l, Inc.*, 274 B.R. 427, 440-41 (BC D. Del.
2002).  Section 502(b)(6) caps the amount of damages allowable to a landlord resulting from the
termination of a real property lease.  The court in *In re Loewen Group Int'l, Inc.* noted that courts
have held that if a debtor is a guarantor on a lease obligation, the cap in § 502(b)(6) applies to a
lease guaranty claim notwithstanding the fact that the debtor's obligation is not an obligation to
pay rent but to guarantee the payment of such rent. *Id.* at 441 *citing In re Episode USA, Inc.*, 202
B.R. 691, 695-96 (BC S.D.N.Y.1996); *In re Farley, Inc.*, 146 B.R. 739, 745 (BC N.D. Ill. 1992);
*In re Revco D.S., Inc.*, 138 B.R. 528, 532 (BC N.D. Ohio 1991); *In re Rodman*, 60 B.R. 334,
334-35 (BC W.D. Okla. 1986).  *See also Matter of Interco, Inc.*, 149 B.R. 934, 940-41 (BC E.D.
Mo. 1993).  *But see In re Danrik*, 92 B.R. 964 (BC N.D. Ga. 1988).

Thomas D. Renda
Patricia A. Borenstein
Miles & Stockbridge P.C.
10 Light Street
Baltimore, Maryland 21202

Luc A. Despins
Paul Malek
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY  10005-1413

John L. Daugherty
Assistant United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, Maryland 20770

All other parties requesting notice

**End of Memorandum Decision**